**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0851-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BLONSON FLORESTAL, a/k/a
ROLLACK BOLLAT,

    Defendant-Appellant.

_____

Argued January 26, 2021 – Decided March 29, 2021

Before Judges Gilson, Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-04-0466.

Melanie K. Dellplain, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joseph J. Russo, Deputy Public Defender, of counsel and on the brief).

William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Indicted on twenty-three counts for crimes allegedly committed during a planned home invasion that resulted in the shooting-death of one victim, defendant Blonson Forestal pleaded guilty pursuant to a plea agreement to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), as amended from murder, N.J.S.A. 2C:11-3(a)(1), (2).  As part of the plea agreement, under which he was sentenced to a twenty-year prison term, defendant specifically reserved the right to appeal from the trial court's denial of his motion to suppress the custodial statements he had given to detectives.  On appeal, he argues:

> POINT I
>
> [DEFENDANT'S] STATEMENT WAS IMPROPERLY RULED ADMISSIBLE BECAUSE THE WAIVER OF HIS PREVIOUSLY ASSERTED RIGHT TO COUNSEL WAS OBTAINED THROUGH THE FUNCTIONAL EQUIVALENT OF CONTINUED INTERROGATION.
>
> POINT II
>
> [DEFENDANT'S] SENTENCE IS EXCESSIVE AND MUST BE REDUCED.

We see no merit to defendant's challenge to the denial of his suppression motion but remand for resentencing.

2

Defendant argues the detectives who initially interviewed him continued the functional equivalent of interrogation after he invoked his right to counsel by placing him in a holding cell adjacent to an interview room in order to have defendant hear his codefendants' statements to the police. In his merits brief he contends police knew he "could hear [codefendant Evens] Dumas tell the detectives interviewing him that he did not want to be blamed for a murder he did not commit," and he "could also hear co[]defendant [Keshawn] Malone make 'certain admissions pertaining to the homicide.' After hearing his putative co[]defendants make various admissions, a fact known to law enforcement, [defendant] 'notified [the officers that] he wanted to talk about the incident[,]'" leading to his admission that he had participated in the homicide by driving the vehicle to the site of the robbery.

Defendant, however, did not raise this argument to the trial court. During oral argument following the testimonial segment of the <u>Miranda</u>[1] hearing, his counsel argued to the trial court the interviewing detectives had lied to defendant that he: matched "a general description given by the individuals . . . at the scene of the home invasion"; was "pick[ed] . . . out of a lineup"; and was seen on surveillance video "going and coming." Notably, he also argued defendant

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-0851-18

was also told that the other two co[]defendants had named him. That [was] not true. He was told, additionally, that they had indicated that he was in the house. That is not true. Judge, those are small things and I'm sure in the scheme of things—and I know that the police are actually allowed to lie during the course of an interrogation, but [counsel was] troubled by those things[.][2]

His challenge was based on what the police had told him, not what he had heard his codefendants admit. The trial court acknowledged and addressed those arguments in its written decision, understandably without mention of any of defendant's present arguments.

Thus, the State, in meeting its burden to prove defendant's statement was voluntary, State v. Yough, 49 N.J. 587, 597 (1967), did not elicit evidence regarding defendant's placement in a holding cell adjacent to the interview room. The record is, therefore, bereft of proofs relating to the layout of the police facility; we do not know if there were other cells in which defendant could have been placed that were not within earshot of a person detained in the cell. Moreover, because his argument to the trial court involved only what he was

---

[2] Defendant also claimed his statement should have been suppressed because "there was about ten hours['] worth of interrogation before [he] actually began to speak[,]" during which he had been transported for processing and that he had told the detectives, "I'm going to stop talking now." Those claims are not at issue on appeal.

told by police, there is no evidence of what the codefendants had said implicating or even regarding defendant, what defendant had heard from the holding cell or what statements had prompted defendant to re-engage the detectives.

Defendant's present argument is based on the United States Supreme Court's holding in Rhode Island v. Innis, 446 U.S. 291 (1980), and its progeny. In Innis, the Court explained that

> the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response [whether inculpatory or exculpatory] from the suspect.
>
> [446 U.S. at 301 (footnotes omitted).]

The Court reasoned:

> The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation

5

can extend only to words or actions on the part of police officers that they <u>should have known</u> were reasonably likely to elicit an incriminating response.

[<u>Id.</u> at 301-02 (footnotes omitted).]

The Court reviewed two officers' conversation while transporting Innis to the police station after he had invoked his right to counsel, during which one officer expressed his concern that handicapped children attending a school near a murder scene might find the murder weapon—a shotgun—and be fatally injured. <u>Id.</u> at 294-95. Innis interrupted the officers' conversation and told them he wanted to show them where the gun was located, later telling police "that he understood those rights but that he 'wanted to get the gun out of the way because of the kids in the area in the school.'" <u>Id.</u> at 295.

The Court ruled the officers' conversation was not the equivalent of interrogation,

> [g]iven the fact that the entire conversation appears to have consisted of no more than a few off hand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond. This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the respondent's contention that, under the circumstances, the officers' comments were particularly "evocative." It is our view, therefore, that the respondent was not subjected by the police to words or actions that the police should have known were

A-0851-18

reasonably likely to elicit an incriminating response from him.

[Id. at 303.]

Under like analysis, we are convinced the detectives' placement of defendant in the holding cell was insufficient to establish that the police should have known their action would elicit defendant's request to talk to them about the homicide. Even if the detectives knew defendant could hear from the holding cell what was being said in the interview room, there is no evidence they knew what the codefendants would say, much less that the codefendants would implicate defendant or say something that would cause defendant to re-engage the detectives in an interview.

Furthermore, this was not the case, as in Innis and other cases—from New Jersey and other jurisdictions—cited by defendant in his merits brief, where the defendant was directly confronted by police with information. See, e.g., State v. Wright, 444 N.J. Super. 347, 365-67 (App. Div. 2016) (concluding an officer who provided updates to a defendant on the progress of the investigation should have known his actions would likely elicit an incriminating response); State v. Ward, 240 N.J. Super. 412, 416-19 (App. Div. 1990) (requiring Miranda warnings where a defendant "was confronted in his cell by the [d]etective in charge of the robbery investigation, told of the robbery and of the formal charge

against him, and then shown the pictures" of the robbers because it was the functional equivalent of interrogation). There is no evidence defendant was confronted by the detectives with any information while in the holding cell. We do not accept defendant's leap, unsupported by any evidence, that the detectives hoped to elicit statements from the codefendants that would be heard by defendant, the content of which would be sufficient to cause defendant to waive his right to counsel and wish to be reinterviewed.

Accordingly, we perceive no reason to reverse the trial court's denial of defendant's motion to suppress his statement.

In sentencing defendant, the trial court found aggravating factor three, the risk that defendant would commit another offense, N.J.S.A. 2C:44-1(a)(3). In doing so, the court said:

> I know he has a prior offense that was not indicted, but there's a risk. I find that risk though is low for several reasons. One, he's going to be in jail for significant— state prison for a significant amount of time. But I do believe he is truthful that he is trying to better himself. And I hope when he does come out that he—I don't see him again as he says.

We do not discern that the court based the aggravating factor on the prior offense for which a "no bill" was returned. See State v. Green, 62 N.J. 547, 571 (1973), overruled on other grounds by State v. K.S., 220 N.J. 190 (2015)

(holding while a charge that does not result in a conviction may be considered in sentencing, "[t]he important limitation of course is that the [court] shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt").  The court found the aggravating factor notwithstanding that offense, stating, "but there's a risk."  The court, however, gave no reason for that finding, compelling our remand.

We recognize defendant received the exact sentence bargained for: twenty years in State prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and, contrary to defendant's merits-brief argument, that was not the maximum sentence that could have been imposed for aggravated manslaughter.[3]  But "[m]erely enumerating [the statutory] factors does not provide any insight into the sentencing decision[.]"  State v. Kruse, 105 N.J. 354, 363 (1987).  A court must state on the record its findings on the applicability of the aggravating and mitigating factors, and the underlying factual basis for those findings.  N.J.S.A. 2C:43-2(e); R. 3:21-4(g).  We remand for the court to comply with that mandate.

---

[3]  The statutory maximum sentence for aggravated manslaughter is thirty years. N.J.S.A. 2C:11-4(c).

Turning to defendant's Rule 2:6-11(d) submission, urging the application of the recently enacted statute adding as a mitigating factor—that "[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense[,]" N.J.S.A. 2C:44(1)(b)(14)—we note the trial court found defendant's youth as a mitigating factor: "And I give him credit, although not statutory, that he is a youthful offender."[4]  Thus, we do not address defendant's contention that the new statute, N.J.S.A. 2C:44(1)(b)(14), must be considered. It already was, albeit prior to its effective date of October 19, 2020, over twenty-two months after defendant—then almost twenty-four years old—was sentenced.

Affirmed but remanded for resentencing consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  The court added that it found defendant "was, in fact, perhaps influenced by people older than him in this."  See N.J.S.A. 2C:44-1(b)(13).